## Sandy Hook Bank's Trustee v. Bear.

(Decided June 23, 1933.)

MARCUS C. REDWINE and W. C. HAMILTON for appellant.

LESTER HOGGE for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Affirming.

Watt Pritchard has appealed from a judgment quashing an execution and the levy thereof, and perpetually enjoining the issue of further process or execution for the collection of a judgment of record in order book No. 16, page 213, of Rowan circuit court.

In December, 1925, the Sandy Hook Bank was placed in the hands of C. E. Marvin for liquidation, and the active conduct of such liquidation was intrusted to Wick H. Strother, special deputy banking commissioner.

On March 16, 1927, the judgment mentioned was rendered and it is as follows:

"C. E. Marvin, Banking Commissioner for State of Kentucky, by Wick H. Strother, Special Deputy Banking Commissioner, Plaintiff, v. Johnie Bear, Defendant.

Judgment.

"This cause coming on to be heard at the regular call of the docket, and it appearing to the satisfaction of the Court that the defendant, Johnie Bear, has been duly served with process, and failing to answer or make any defense, it is therefore adjudged by the Court that the plaintiff, Wick H. Strother, Special Deputy Banking Commissioner for the State of Ky., recover of the defendant Johnie Bear, the sum of $4,988.76 with interest thereon at the rate of 6% per annum, from the 24th day of April, 1925 until paid and for the cost herein expended, for all of which execution may issue in the name of and on behalf of Wick H. Strother, Banking Commissioner for and under C. E. Marvin, and this cause is now continued."

Strother had the right to sue on this note, as deputy banking commissioner. See Wilson v. Combs, 242 Ky. 203, 45 S. W. (2d) 1055. Bear never paid this judgment or any part of it, and, as the deputy banking commissioner about this time had collected enough money to pay all the debts of the Sandy Hook Bank, the remaining assets of the bank, including this judgment, were turned over to Watt Pritchard for collection and division among the stockholders of the bank.

On April 22, 1927, Bear went into voluntary bankruptcy, and on February 28, 1928, was discharged. On February 4, 1931, at the instance of Pritchard, an execution was issued upon this judgment, and on May 2, 1931, Bear filed this suit, pleading his discharge in bankruptcy and seeking to quash this execution and to obtain an injunction to prevent the issue of any execution or further process on this judgment.

The question in this case is: Was this judgment

discharged, and that depends upon whether it was properly scheduled in the bankruptcy proceedings?

In his amended petition, Bear says that in those proceedings he scheduled this judgment in this manner, and this allegation is supported by the evidence:

"Schedule A. (3) Creditors whose claims are unsecured.

"Judgment owing to W. H. Strother, Special Deputy Banking Commissioner liquidating Sandy Hook Bank, Grayson, Ky. Said judgment of record in the Clerk's office of the Rowan circuit court, of Morehead, Ky."

In the case of First National Bank of Jackson v. Strong et al., 228 Ky. 604, 15 S. W. (2d) 477, we set out those things which must be done in order to obtain a discharge in bankrupty that will bind a creditor, and the question in that case is: Has Bear done those things?

When the first notices were sent out in the bankruptcy proceeding, notice was not sent to any one concerning this claim, because the referee in bankruptcy in making up his certified list of creditors gave the address of W. H. Strother as "unknown." Later, when Bear made his application for discharge, notice was mailed to W. H. Strother, Frankfort, Ky., and it was returned "unclaimed." The proof shows that neither Mr. Strother nor any of those connected with the Sandy Hook Bank had any actual notice of or knew of the pendency of this bankruptcy proceeding. If a notice of this bankruptcy proceeding has been mailed in an envelope upon the outside of which there had been written the above information as contained in the schedule filed by Bear, Mr. Strother would have received it. The failure of Mr. Strother to get notice of this bankruptcy proceeding is due to the error of the referee in bankruptcy in certifying that the address of this judgment creditor was "unknown." The judgment was in favor of Strother as deputy banking commissioner. Bear had the right to go by the record. There is no evidence Bear had any notice that any one else had then any sort of ownership in this judgment. Bear is not responsible for the mistakes made by the referee in bankruptcy; therefore the court did not err in holding that this debt had been discharged by that proceeding.

Pritchard complains because the court in its judg-

ment quashed this execution and enjoined all efforts to collect this judgment, without requiring Bear to execute a bond. This was not error, as this injunction was a part of the final judgment.

Frauds alleged to have been practiced by Bear, in these bankruptcy proceedings, are matters for which Pritchärd must look to the federal court for relief. Eyster v. Gaff, 91 U. S. 521, 23 L. Ed. 403, contains nothing to the contrary, as that opinion was dealing with a matter of which the state court had acquired jurisdiction before the institution of the bankruptcy proceedings, and the same is true of the opinion in Hoskins v. Hoskins' Trustee, 241 Ky. 420, 44 S. W. (2d) 302.

Pritchard claims the bankruptcy proceeding did not affect the lien to secure this debt, but the only lien asserted here is the one derived through the levy of this execution, and when this execution was quashed that was the end of the lien acquired by its levy.

The judgment is affirmed.

The whole court sitting.